'cept this determination and act upon it, but some six months after moved this court for a resettlement of its order. This motion was denied, and in December, 1900, a motion was made at special term to obtain an amendment of the writ by adding to its provisions the following:

"And we further command you that, upon the receipt of this writ, you reinstate the said relator as superintendent of the Harlem River Driveway, and pay him the sum of one hundred and twenty-five dollars a month from the 14th day of February, 1898, and for other relief."

This motion was granted, on payment of $10 costs, and from the order so made and entered this appeal is taken.

While the special term doubtless had the power to grant the motion and allow the amendment (People v. Clausen, 50 App. Div. 287, 63 N. Y. Supp. 993), and we are not prepared to say that the discretion of the court was unwisely exercised in allowing the same, yet we are of the opinion that the terms upon which it was allowed were entirely inadequate. The relator, in seeking the amendment, appeals to the favor of the court; and it would be entirely unjust to inflict upon the defendant the burden of the cost of all the litigation caused by his persistence in a wrong course. The result of the course pursued by relator, should he finally succeed in securing a peremptory mandamus restoring him to position and salary, is that the defendant will be compelled to pay the salary of relator from the date of his removal to the time of his reinstatement, during which time he will not have rendered any service, all of which delay has been caused by the persistence of relator in an erroneous course. In addition to this is the burden of the cost and trouble of the litigation. Both on principle and authority, we think the special term was in error in granting the relief upon such terms. Rodgers v. Clement, 58 App. Div. 54, 68 N. Y. Supp. 594; Ireland v. Railroad Co., 8 N. Y. St. Rep. 127; McEntyre v. Tucker, 40 App. Div. 444, 58 N. Y. Supp. 146. We think the relator should not be allowed the amendment, except he indemnify the defendant for the expense incurred in the litigation, and waive his salary for the time subsequent to the trial.

The order should therefore be modified as indicated,—by requiring, as a condition of allowing the amendment, that the relator pay all the defendant's costs and disbursements after the service of the writ, including the appeals to the appellate division and the court of appeals, and stipulate to waive all claim for salary subsequent to the date of the trial, May 9, 1899,—and, as so modified, affirmed, with $10 costs and disbursements to the appellant. In case such conditions be not complied with, the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

(61 App. Div. 163.)

LECOUR v. IMPORTERS' & TRADERS' NAT. BANK et al.

(Supreme Court, Appellate Division, First Department. May 10, 1901.)

1. EVIDENCE—ADMISSIONS—CONCLUSIVENESS.

Admissions made by an executor in an accounting, and in an action by a beneficiary against him, that he has received certain moneys of the estate collected by his attorney, is not conclusive evidence of the executor's receipt thereof as in favor of the attorney, though it is admissible

in an action by the executor's administrator to recover the money from the person to whom the attorney is alleged to have wrongfully transferred it.

**2. WITNESSES—COMPETENCY—COMMUNICATIONS WITH DECEASED.**

Code Civ. Proc. § 829, prohibiting a witness interested in the event of a suit from testifying against an administrator as to a personal transaction with testator, does not prevent an attorney who is not a party to a suit by an administrator to recover money belonging to his decedent, and alleged to have been wrongfully collected and transferred to the defendant by the attorney without authority from the decedent, from testifying to his authority, since he is not interested in the result of the case, as his rights will not be affected by the judgment, and it will not be admissible in evidence against him.

**3. SAME.**

Code Civ. Proc. § 829, does not prevent an attorney who is not a party to a suit by an administrator to recover money belonging to his decedent, and alleged to have been wrongfully collected and transferred to defendant by the attorney without any authority therefor, from testifying as to such authority, since the defendant derived no title to the money from the attorney, as no title passed if he had no authority, and he was acting for the principal if he had authority.

**4. SAME—ATTORNEYS—PRIVILEGED COMMUNICATIONS.**

Code Civ. Proc. § 835, providing that the clerk of an attorney at law shall not be allowed to testify as to a confidential communication made by a client, does not prevent a lawyer's clerk from testifying to a communication by a client made openly and in the presence of others.

Ingraham, J., dissenting in part.

Appeal from judgment on report of referee.

Action by Aimee R. Lecour, as administrator of the estate of Eugene H. Lecour, deceased, against the Importers' & Traders' National Bank and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

David Levy, for appellant bank.
Abram Kling, in pro. per.
Marshall B. Clarke, for respondent.

HATCH, J. This action was brought to recover the proceeds of a certain check claimed to have been converted by the defendants Kling and the Importers' & Traders' National Bank. The check was drawn to the order of plaintiff's intestate, Eugene H. Lecour, as executor of Joseph Houpert, by the chamberlain of the city of New York. The transaction, in brief, was this: Lecour was the executor of Houpert, deceased, and, as such executor, had invested certain of the funds of the estate in a second mortgage. The first mortgage being foreclosed, a sale of the premises was had; and a surplus of $8,015.13 over and above the amount of the first mortgage was the product of the sale, and was paid, by the direction of the judgment, to the chamberlain of the city of New York. Edmund Huerstel, as attorney for the executor, Lecour, instituted proceedings to obtain such surplus moneys, which resulted in an order directing the payment of such moneys to the executor, Lecour. The chamberlain, upon the presentation of such order, drew his check to the order of Lecour, as executor, and delivered the same to Huerstel. The lat-

ter, as it is claimed by the plaintiff, without authority from Lecour, indorsed his name upon the check, and delivered the same to defendant Kling, who in exchange therefor delivered his check for the same amount to Huerstel. Kling subsequently deposited the check with the defendant the Importers' & Traders' National Bank, where the same was credited to the account of Kling; and the latter thereafter withdrew such moneys from the bank, and applied them to his own use. It further appears that Huerstel deposited Kling's check in his bank, retained the proceeds to his own use, and never paid them over to the plaintiff's intestate. It is the proceeds of the chamberlain's check which it is sought by this action to recover of these defendants. To the claim of the plaintiff the defendants interpose three defenses: First, that the executor, Lecour, authorized Huerstel to indorse the chamberlain's check; second, that subsequent to such indorsement Lecour ratified the same; and, third, that Lecour received the money so collected by Huerstel.

This is the second appearance of this case in an appellate tribunal. Upon a former trial before another referee, these several defenses were overruled, and the referee found as a fact that Huerstel had no authority to indorse Lecour's name upon the chamberlain's check, that there was no subsequent ratification of such indorsement, and that the money was never paid over by Huerstel to the executor, Lecour, and directed judgment in favor of the plaintiff for the amount of the check, together with the interest thereon. Upon appeal from this judgment, the case having been transferred from this department, it was considered by the appellate division of the Second department. Lecour v. Bank, 38 App. Div. 384, 56 N. Y. Supp. 356. The court therein reached the conclusion that the evidence was sufficient to support the findings of the learned referee upon all of the questions which had been urged by the defendants as a defense to the action. That court, however, felt constrained to reverse the judgment and grant a new trial for errors committed in the reception of evidence upon the trial. The questions controlling the determination of the court upon that appeal have been eliminated from the present record. Upon the new trial which was had, the learned referee reached precisely the same conclusion upon the merits as was reached upon the former trial. Upon this trial the evidence affecting the merits of the defense interposed is very largely the same as was present at the first trial, and considered by the court upon the appeal. Upon this appeal, as upon the first, the defendants contend that the finding of the learned referee is against the weight of evidence, as affecting the defense interposed. We see no reason for disagreeing with the conclusions which have been reached upon this trial upon the merits, or with the conclusion which was reached by the court upon the former appeal.

Great stress is laid upon an admission contained in an account of Lecour, as executor, presented to the orphans' court in the state of New Jersey, and upon an admission contained in an answer in an action brought in the court of chancery in New Jersey against Lecour by a daughter of his testator, Houpert, to recover the amount of the proceeds of the chamberlain's check. These questions were

urged upon the court upon the former appeal, and it was there held that the admissions contained in the account and in the answer constituted competent evidence as an admission of the reception of the money by Lecour as executor, but that they were not conclusive of such fact. We again reiterate such rule. We do not find it necessary, however, to enter upon a detailed discussion of the reasons for this conclusion. It is sufficient for present purposes to say that these admissions are to be taken in their entirety, coupled with 'the circumstances and conditions existing at the time when the account was made and the answer served. It is quite clear that the admissions themselves, when so weighed, are not inconsistent with the fact that the money never reached the hands of Lecour. They are also consistent with the fact that they did, and that he is the only person chargeable therewith. The evidence presents alone a question of fact, which the defendants are entitled to have considered, as tending to relieve them from liability; but it is not conclusive, and they may not complain if the court upon the trial resolve such question adversely to their contention. There are no other questions upon the facts which we deem it necessary to discuss. Upon the merits, therefore, the judgment may be upheld.

We are constrained, however, to again reverse this judgment for errors committed in the rejection of evidence by the learned referee upon the trial. The defendants in support of their defense called Huerstel, the attorney of Lecour, for the purpose of proving authority in the latter to indorse the check in question. The plaintiff immediately made objection to the preliminary question as to the witness' acquaintance with Lecour, upon the ground that the witness was incompetent to testify to any transaction with the deceased, under section 829 of the Code of Civil Procedure; the contention being that he was interested in the event of the action. The same objection was renewed at every subsequent attempt to elicit any answer from the witness tending to establish his authority to indorse the check. The learned referee held and ruled that the witness was so incompetent, and excluded the testimony. This ruling, we think, was error. The witness was not a party to the action; nor did he, as we understand the authorities, have a disqualifying interest in the result. In Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836, many cases discussing this question are reviewed; and it was there held that the interest of a witness must be a legal interest in the event of the action. He can have an interest in two ways: (1) When some legal right would be affected by the actual event of the action; and (2) when the record of the judgment might be used against him to establish a legal right charging him with liability. Unless, therefore, he comes within one or the other of these rules, his testimony, so far as interest is concerned, is competent. Bank v. McCarty, 149 N. Y. 71, 84, 43 N. E. 427. Huerstel was not a party to the action. Consequently he would not be bound by the judgment rendered. He is not, therefore, within the first rule. The judgment pronounced would not be admissible against him in an action brought to charge him with liability for the misappropriation of the money. This was clearly decided in

Wallace v. Straus, 113 N. Y. 238, 21 N. E. 66.   Therein the witness was liable as a primary debtor upon an instrument in which the defendant was chargeable as guarantor; the latter being, in effect, surety for the debt and obligation of the witness.   The action was brought by the executrix of the holder of the obligation, who had deceased.   The primary debtor was offered as a witness to testify respecting certain instructions which he had given to the holder respecting the disposition of the property which was the subject of the instrument sued upon, and which might have relieved both witness and defendant from liability.   This testimony was excluded, and upon appeal the court held the ruling to be error; holding that any judgment which might be rendered against the defendant would not establish the witness' liability as primary debtor, except that it might be received to establish the amount of the recovery, and therefore the sum which the guarantor would be entitled to receive as surety if he established liability against his principal, but that it could be evidence for no other purpose.   The court enforced the rule that no man ought to be bound by anything to which he was a stranger.   Applying that principle to the facts of this case, it is clearly evident that Huerstel would not be estopped by any judgment that might be rendered in this case, or debarred from showing any defense of which he was possessed, if he were sought to be charged with the misappropriation of the money.   If within his power, he could still prove that he had authority from his client to indorse the check or to make use of the money, or that he had paid it over to him, or had been otherwise relieved from liability on account of the transaction.   He did not, therefore, fall within the second category.   Nearpass v. Gilman, 104 N. Y. 506, 10 N. E. 894; Hobart v. Hobart, 62 N. Y. 80.   It was said upon the former appeal that it was very doubtful whether Huerstel was a competent witness to establish the fact of authority to indorse the check, but the court did not pass upon or decide such question.   Consequently it is not an authority for the ruling, and, within the authorities cited, we think such testimony was competent.   Nor can the ruling be supported upon the ground that he was a person from, through, or under whom the party interested derived his title.   Kling derived no title from Huerstel.   If he had, there would be no liability.   If Huerstel had no authority, he was a forger.   If he had, he was the agent of Lecour to pass title to the moneys.   This question is also settled by authority.   In Eisenlord v. Clum, supra, the witness offered was the mother of the plaintiff, who, if the plaintiff established a right in his father's estate, would be entitled to a dower interest therein.   She was not a party to the action, and it was held that she was not an incompetent witness, nor would a judgment establish her dower right.   The son did not derive title from her, but from the father.   Consequently it was held that the witness was not incompetent under this provision of the Code.   Baxter v. Baxter, 13 App. Div. 65, 43 N. Y. Supp. 94.

We also think error was committed in excluding the testimony of the witness Burd.   It appears from the evidence that he was managing clerk in the office of Huerstel.   He was called to testify as

to the authorization given by Lecour to Huerstel to indorse the check. Objection was made that such testimony contravened section 835 of the Code of Civil Procedure. It is claimed that a conversation was had between this witness and Lecour in the office of Huerstel in his absence, and in the presence of two other persons, in which Lecour made certain declarations regarding the authority of Huerstel to indorse his name upon the check in question. One of these witnesses was called and testified to such declarations upon the trial. It is quite true that the provisions of the Code are broad enough to exclude the testimony of a managing clerk in a lawyer's office as to confidential communications between the managing clerk of the attorney and the client. The reason for the rule is precisely the same as that which closes the mouth of the attorney. It is based upon the nature of the relation between the attorney and client, communications between whom a sound public policy requires shall be held sacred; but, in order that the rule or its reason shall apply, it is inherently necessary that the communication made by the client to the attorney or to the clerk should be secret and confidential. If the client chooses to make his communication open, so that others may hear, it ceases to be such a communication as is entitled to protection; and neither the reason for the rule, nor the rule itself, closes the mouth of any person. People v. Hayes, 140 N. Y. 484, 496, 35 N. E. 951, 23 L. R. A. 830; People v. Buchanan, 145 N. Y. 1, 26, 39 N. E. 846. It having appeared in the present case that, if any declaration was made, it was made to the clerk openly in the presence of others, and not confidentially, the rule ceased to have application to it, and no one's mouth was closed. The evidence offered should therefore have been received.

If these views are correct, it follows that the judgment should be reversed, and a new trial granted before another referee, with costs to the appellant to abide event.

VAN BRUNT, P. J., and PATTERSON and McLAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). I do not think that Huerstel was a competent witness to testify as to personal transactions between himself and Lecour, the plaintiff's intestate. The question at issue is as to the validity of the transfer by indorsement to the defendant Kling of the check drawn to the order of Lecour, and Kling's right to the check or the proceeds must depend upon Huerstel's right to indorse and deliver the check to Kling. The only interest or title to the check claimed by Kling was from its delivery to him by Huerstel, and Huerstel was therefore a person from, through, or under whom Kling derived his interest or title in the check. Whether Huerstel had an interest or title to give depended on his authority to indorse the check; and to prove that authority by the evidence of the person who transferred the check to Kling would, I think, be a direct violation of section 829 of the Code. The case of Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836, is not an authority on this point. There the plaintiff's mother had no in-

terest in the land which was the subject of the controversy, and the plaintiff had not derived his title or interest from, through, or under his mother. His title to the land depended upon his being a legitimate child of the deceased, Eisenlord, while here Kling's title or interest in the check is derived entirely from its delivery to him by Huerstel. I concur in the second ground stated by Mr. Justice HATCH.