ROBERT M. S. PUTNAM, Respondent, *v.* LINCOLN SAFE DEPOSIT COMPANY and JOHN RISLEY PUTNAM, Respondents, Impleaded with CHARLES H. STURGES, as Executor, etc., of MARY STEINER PUTNAM, Deceased, Appellant.

ISRAEL PUTNAM and CORLISS SHELDON, as Administrator with the Will Annexed of JOHN R. PUTNAM, Deceased, Appellants.

*Evidence — hearsay — Code of Civil Procedure, § 829 — written statement made by a trustee as to the disposition of the trust estate — not competent as against his wife, the beneficiary, whom it charges with having certain of the trust fund — competency of the executor of the creator of the trust to testify as against the representatives of the deceased trustee as to the trust securities delivered to the trustee.*

Robert M. Shoemaker, deceased, bequeathed a fund of $200,000 to John R. Putnam in trust for the benefit of the latter's wife, Mary Steiner Putnam, during her life, with remainder, at her death, to her children. The executor of

Robert M. Shoemaker delivered to John R. Putnam securities to the full amount of the trust fund. John R. Putnam administered the fund on a trust basis for several years, but ultimately reached the conclusion that, under the will, the entire trust fund passed absolutely to the said Mary Steiner Putnam. Acting on this belief, he transferred some of the trust securities to her individually and sold others and reinvested the proceeds in the individual name of Mary Steiner Putnam.

In an action brought by one of the remaindermen, after the death of John R. Putnam and Mary Steiner Putnam, to compel their personal representatives to account for the trust fund, it appeared that Mary Steiner Putnam possessed a separate estate and that for several years she and her husband, John R. Putnam, had rented, in their joint names, a safe deposit box, to which each of them had access; that on the death of Mary Steiner Putnam, which occurred subsequent to the death of her husband, there was found in this safe deposit box certain securities which originally constituted part of the trust fund and various shares of stock purchased and standing in the name of Mary Steiner Putnam.

It also appeared that John R. Putnam, shortly before his death, caused to be prepared a statement of his position with respect to the trust. This statement set forth the original trust securities found in the safe deposit box, also the specific trust securities which the trustee had disposed of, also a list of stocks standing in the name of Mary Steiner Putnam headed "Property purchased or held in place of that disposed of, mentioned above." This document was indorsed by the trustee in his own handwriting, "In re Will of R. M. Shoemaker, deceased, Inventory, etc."

It did not appear that Mary Steiner Putnam ever saw the paper or knew of its contents or that she acquiesced in the statement to the effect that the securities in the safe deposit box standing in her name were a part of the trust fund or should go to replace such of the trust securities as the trustee had improperly sold.

*Held,* that the statement was admissible against the representatives of the estate of John R. Putnam as it was a clear declaration against his interest, but that it was not admissible against the personal representatives of Mary Steiner Putnam;

That the executor of the will of Robert M. Shoemaker, deceased, was not incompetent, under section 829 of the Code of Civil Procedure, to testify as against the representatives of the estate of John R. Putnam, deceased, to the securities and moneys turned over by him from the estate of Robert M. Shoemaker to the trustee, John R. Putnam.

CHESTER, J., dissented.

APPEAL by the defendants, Charles H. Sturges, as executor, etc., of Mary Steiner Putnam, deceased, and others, from a judgment of the Supreme Court in favor of the plaintiff and certain of the defendants, entered in the office of the clerk of the county of

Saratoga on the 13th day of February, 1903, upon the report of a referee.

*Charles H. Sturges,* in person, for the appellant Charles H. Sturges, executor.

*Corliss Sheldon,* for the appellant Israel Putnam, and in person for the administrator, etc., of John R. Putnam, deceased, appellant.

*Albert Stickney* and *Otto C. Wierum, Jr.,* for the plaintiff, respondent.

*Samuel Hoff,* for the respondent Lincoln Safe Deposit Company.

*A. Pennington Whitehead, Edgar T. Brackett* and *Nash Rockwood,* for the respondent John Risley Putnam.

PER CURIAM:

The will of Robert M. Shoemaker, deceased, created a trust fund of about $200,000 for the benefit of his daughter, Mary Steiner Putnam, during her life, the remainder, upon his death, to go to her children, and appointed her husband, John R. Putnam, as trustee thereof.

Shortly after the death of the testator, the trustee received in securities of various character the full amount of the trust, which he administered on a trust basis for some years. A question arose in the mind of the trustee as to the validity of the trust, and he finally interpreted the language of the will as giving the entire fund absolutely to his wife, Mary Steiner Putnam, and in furtherance of that interpretation began the sale of the securities which he had received under the trust, and a reinvestment of some portion of the proceeds in the individual name of his wife, and the actual transfer to her individually of some of the property.

The trustee died in 1899, and his widow died in the following year, leaving a will by which she attempted to devise and bequeath to one of her children, to the exclusion of the other two, all of the property coming through the will of her father as well as that owned by her individually.

Action was brought by this plaintiff, one of the children thus excluded, which resulted in a judgment establishing the trust and directing that the representative of the trustee and the representative of the widow account for the trust fund; and that accounting has resulted in the judgment now appealed from, charging the rep-

resentatives of the trustee with the full amount thereof, including certain devastavit found by the court, and also finding that certain stocks and bonds standing in the name of Mary Steiner Putnam were a part of the trust fund, and directing their transfer from the estate of Mary Steiner Putnam to the trust fund.

Mary Steiner Putnam received from her father during his lifetime and under his will a considerable amount of money which was concededly not affected by the trust. For several years a bank account was kept in the name of John R. Putnam and Mary S. Putnam, upon which either could draw; and also for several years there had been rented in the name of John R. Putnam and Mary S. Putnam, to which each had access, a safety deposit box with the Lincoln Safe Deposit Company of New York. On the death of Mary Steiner Putnam there was found in this safety deposit box original securities belonging to the trust fund, amounting at par value to about $92,000, and various shares of stock purchased and standing in the name of Mary Steiner Putnam.

Shortly before his death the trustee caused to be prepared a statement of his position with respect to the trust, included in which was a statement of the $92,000 worth of securities on hand, and a statement of the specific securities originally a part of the trust fund, which he had disposed of, amounting to about $111,000, and then followed a list of stocks standing in the name of Mary Steiner Putnam, headed, "Property purchased or held in place of that disposed of mentioned above," amounting by estimated value to about $107,000, included in which was a note of $36,000 and over, made by his wife to him as trustee, and cash on hand of $6,000. This document was indorsed by the trustee in his own handwriting, "In re Will of R. M. Shoemaker, deceased, Inventory, etc.," and is known in the case as Exhibit No. 27. This paper was offered in evidence by the plaintiff, not only against the administrator of the trustee, but against the executor of Mary Steiner Putnam. Both objected to its admission, the executor of Mary Steiner Putnam particularly, that it was hearsay and incompetent as against her or her estate. To its reception exception was duly taken. There was no evidence that Mary Steiner Putnam ever saw the paper, or knew of its contents, or acquiesced in the statement to the effect that the securities in the Lincoln safety deposit box,

standing in her name, were a part of the trust fund, or should go to replace such of the trust funds as the trustee had improperly disposed of. While the paper was undoubtedly evidence against the representatives of the estate of the trustee, because it was a clear declaration against his interest, specifying that he had disposed of certain of the trust funds, and a statement of such funds as he had originally received, of which he had on hand only a part; yet, in the absence of knowledge or acquiescence on the part of Mary Steiner Putnam, it was clearly error to receive it as against her, for which the judgment against her estate must be reversed. She was possessed of an individual estate. The safety deposit box was rented in her name and that of John R. Putnam. No conclusive presumption arises that the securities standing in her name belonged to the estate, simply because they were found with securities which did belong to the trust fund, for she had a right if she saw fit to share the expense of a safety deposit box with her husband as an individual or as trustee. If she saw fit so to do, the placing of her individual property in the box did not transfer it to the trust fund, nor raise a presumption, worthy to be called such, that it was the property of the trust fund instead of her own. As the evidence now stands, there was no sufficient proof that the stocks standing in her name belonged to the trust fund, aside from the statement made by the trustee contained in Exhibit No. 27. His statement alone, without proof of acquiescence on her part, was not sufficient to bind her. He could not replace securities of the estate which he had misapplied or depleted, and for which he was responsible, by a statement that certain stocks standing in the name of his wife, and presumptively belonging to her, and possibly in his hands for safekeeping, were held in place of those disposed of by him. As to her, in the absence of proof that she had adopted them as her own, his statements contained in the exhibit were mere hearsay.

The ruling is strenuously attempted to be sustained by counsel for the respondents, and *Higham* v. *Ridgway* (10 East, 109) is cited as an authority upholding its correctness. That case permitted the introduction in evidence of books of a midwife showing the date of delivery of a child. Pedigree is one of the exceptions to the admission of hearsay evidence, arising from the necessity of the

case.    In *Eisenlord* v. *Clum* (126 N. Y. 553) the term " pedigree " is defined to embrace not only descent and relationship, but birth, marriage and death, and the time when these events happen; and under this definition the reason for the ruling in the case relied upon is quite manifest.

The trustee was not a public officer, and, therefore, his entries and declarations do not come within the rule permitting entries of deceased public officials to be read in evidence.

But it is said that there is sufficient evidence outside the exhibit to sustain the finding that the stocks standing in the name of Mary Steiner Putnam actually belonged to the trust fund instead of being hers individually, and that the error was harmless.

We cannot concur in this view.    The proofs contained in the exhibit were of such vital character, if taken against her, that presumably they affected the mind of the court in arriving at the conclusion which it did.    The ends of justice will be much better subserved by a new trial from which the objectionable evidence shall be eliminated.    Our conclusion being that because of this error a new trial must be had as against the estate of Mary Steiner Putnam, we refrain from embarrassing the situation by comment upon the evidence, and do not consider the other points raised by the appellants.    A new trial may develop a much different state of facts than now appears.

The representative of the estate of John R. Putnam, deceased, urges certain exceptions taken particularly in his own behalf. Michael M. Shoemaker, the acting executor of the will of Robert M. Shoemaker, deceased, was not incompetent under section 829 of the Code of Civil Procedure to testify to the securities and moneys turned over by him from that estate to the trustee, John R. Putnam.    He was not in any legal sense interested in the event of the action, nor was he a party.    A witness is not disqualified unless he will gain or lose by the event of the action, either directly as in money or relief from liability, or indirectly because the record could be used as evidence for or against him.    (*Eisenlord* v. *Clum*, 126 N. Y. 552, 556; *Albany County Savings Bank* v. *McCarty*, 149 id. 71, 84.)    Not being a party he could not gain or lose by the judgment, and his relations to the judgment are not such that the record could be used as evidence for or against him in any action

which might be brought against him to recover securities belonging to the trust fund. (*Wallace* v. *Straus*, 113 N. Y. 238; *Eisenlord* v. *Clum*, 126 id. 552; *Lecour* v. *Importers & Traders' National Bank*, 61 App. Div. 163.) Nor was Michael M. Shoemaker the person "from, through or under whom" the trustee derived his title. The title came under the will of Robert M. Shoemaker; and while the trust fund passed nominally through the hands of the executor to the trustee named in the will, his title was not such, we think, as to bring him within the language or spirit of section 829 of the Code of Civil Procedure.

The case of *Redfield* v. *Redfield* (110 N. Y. 671), relied upon by appellant, we do not deem controlling. The facts in that case were quite different from those in the present one; but if the principle be said to be the same, the Court of Appeals has had opportunity in many cases decided by it since that decision to affirm its doctrine, but instead has directly repudiated it and has studiously refrained from citing it on the proposition here involved.

The Augusta factory stock and the Sibley Company stock were embraced in the inventory of the trustee as part of the property of the estate, and were, therefore, properly chargeable against him. The beneficiaries of the trust were not parties to the Georgia litigation, and, therefore, they were not bound by the proceedings taken in the Georgia court with reference to the transfer of this stock. If by reason of the trustee being a party to that litigation, it be said that they were bound, yet the trustee treated these stocks as belonging to the trust fund, and the referee very properly took the trustee's interpretation of their ownership. The fact that there were twenty shares more of the factory stock than the trustee accounted for was shown by the testimony of Michael M. Shoemaker, and the referee was justified in finding that there were forty shares thus received instead of twenty.

The language of the trust did not relieve the trustee from liability for devastavit, and the referee properly found that the trustee was personally liable for the losses which were sustained. (*King* v. *Talbot*, 40 N. Y. 76.)

But the two estates are so intertwined that it is impossible to affirm the judgment as to one and reverse it as to the other. If on the new trial to be ordered it shall transpire that Mary Steiner Put-

nam was in fact the owner of the stocks standing in her name, and that they did not in equity belong to the trust estate, then the trustee is liable as for devastavit and his estate must respond to the full amount of the trust property originally received by him. It becomes necessary, therefore, to order a new trial, as to both estates, of the whole accounting.

The judgment should be reversed and the referee discharged and a new trial granted, with costs to the appellants to abide the event.

All concurred, except CHESTER, J., dissenting; CHASE, J., concurred in memorandum.

CHASE, J. (concurring):

The statement of the trustee was not made contemporaneously with the acts therein mentioned. It was not, therefore, a part of the *res gestæ*, and it does not in any way relate to a matter of public interest. It is a private document, the admissions in which are competent evidence against the maker, but not, ordinarily, evidence against a stranger to it.

At the time it was made there was no dispute about the amount that the trustee had received from the executors of the Shoemaker estate. He had receipted therefor, but had transferred the legal title to the personal and real property so received by him. The trustee was in ill-health and about to depart from this country, to which it was doubtful whether he would ever return, and the statement was made by him in explanation of acts on his part in disregard of the trust and essentially in his interest.

The statements relating to the securities that had been transferred or purchased and held in the name of his wife were not incidental to the admissions of the trustee against his interest. Such statements constituted the material part of the paper, and the statements against the interests of the trustee were incidental thereto. To allow such a statement as affirmative evidence against a person not a party thereto, and who had never seen or acquiesced therein, would extend an exception to the admissibility of hearsay evidence beyond any case that has come to my notice, and would make a dangerous precedent.

Such a statement does not come within the rule stated in article 28

of Stephen's Digest of Evidence, mentioned in the opinion at Special Term (*Putnam* v. *Lincoln Safe Deposit Co.*, 39 Misc. Rep. 738, 741).

Judgment appealed from reversed, referee discharged and a new hearing granted of the matters directed by the interlocutory judgment to be tried, with one bill of costs to appellants to abide event.